J-A13025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY REA KISH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CALEB KENT GRAYSON | : | |
| | : | |
| Appellant | : | No. 254 WDA 2025 |

Appeal from the Order Entered February 4, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-22-008313-017,
PACSES No. 303301792

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: August 7, 2026**

Appellant, Caleb Kent Gryson ("Father"), appeals *pro se* from the order entered on February 4, 2025, which denied his petition to modify child support.  We vacate and remand.

Father and Ashley Rea Kish ("Mother") are the parents of three minor children, J.K.G. (born in 2011), C.K.G. (born in 2012), and L.K.G. (born in 2015) (herein, collectively, "the Children").  On July 18, 2022, Father filed the initial custody complaint against Mother, where he sought primary physical and sole legal custody over the Children.  Father's Custody Complaint, 7/18/22, at 1-6.  Mother later filed a "counter-complaint for shared physical and sole legal custody" over the Children.  Mother's Custody Complaint, 9/23/22, at 1-2.  On September 3, 2022, the trial court entered an interim order, declaring that Mother was granted sole physical custody over the

Children, Father was granted supervised visitation with the Children, and the parties shared legal custody of the Children. *See* Interim Order, 9/3/22, at 1-2.

On August 4, 2022, Mother filed a complaint seeking child support.[1] This led to "an interim support hearing on March 16, 2023. [Following the hearing, the court] ordered [] Father to pay $1,255 per month [for child support]." Father's Amended Pre-Trial Statement, 1/22/24, at 2.[2]

On January 25, 2024, a child support hearing was held before the Hearing Officer (hereinafter "the Original Hearing Officer").[3] *See* Father's Exceptions to the March 7, 2024 Report, 3/27/24, at ¶ 2. The Original Hearing Officer found as follows:

> The parties are [Mother and Father]. The parties are the parents of three minor children. . . . The parties were never married but have been together since February 2010. Throughout their relationship, the parties, and subsequently the [C]hildren, resided in various locations, San Francisco, Hawaii, and finally Pittsburgh. The intact relationship ended in July 2022 when Mother left the parties' shared residence with the [C]hildren after some alleged abusive actions by Father.

---

[1] Mother's child support complaint is not contained in the record. Nevertheless, Father "admitted that [Mother] filed a complaint in support and that an initial conference was scheduled for January 19, 2023." *See* Father's Answer to Petition for Special Relief, 1/27/23, at ¶ 8. Further, the docket reflects that Mother's "complaint for support" was filed on August 4, 2022.

[2] The trial court's interim child support order is not contained in the record.

[3] The record does not contain the transcript from the January 25, 2024 child support hearing.

Mother is 48 years of age. She is highly educated, having obtained several degrees, including a Ph.D. in Social and Cultural Anthropology in 2017 from California Institute of Integral Studies in San Francisco. Additionally, she has a master's degree . . . in Higher Education [and] Student Affairs Administration and [a] Bachelor of Arts in Philosophy [and] Communication. However, Mother has limited work experience and essentially none in her educational fields. Mother's most recent "work" experience was participating as a home schooling facilitator (teacher) for the education program in which the parties' children participated from 2016-2022. Otherwise, Mother's work experience was as a Teaching Assistant (TA) in 2009 and 2011 when she attended California Institute of Integral Studies. As a TA, Mother testified she earned $11 hourly. According to Mother's testimony, Father requested she stay at home and care for the [C]hildren rather than pursue a career.

After leaving the parties' residence, Mother sought employment, unsuccessfully. Mother testified she has applied for and has been interviewed for several career-related opportunities but has not been offered a position. In support of this testimony, Mother introduced a series of emails from various entities in which she interviewed or applied but was not offered a position (Pitt, CMU, Pittsburgh Foundation, George Mason University, Hollins University and City of Pittsburgh). Additionally, Mother testified she applied for waitress jobs and at Amazon. As a result, Mother is currently unemployed and without earned income.

Mother did testify having been diagnosed with Post-Traumatic Stress Disorder (PTSD) resulting from trauma allegedly suffered by her at or near when the parties separated. Mother testified to participating in therapy. Although Mother appeared emotional during the hearing, she was able to testify cogently and articulate her case without difficulty. As such, the [Hearing Officer] finds her PTSD would not significantly impact Mother's ability to maintain employment.

As a result of the parties' separation, Mother has had nearly sole physical custody of the children. Father has only had limited custodial visits.

Father is 53 years old. Father earned a Masters of Art from California Institute of Integral Studies, where he met Mother, and a Bachelors of Arts degree in Philosophy, Ancient Greek, and Mathematics. While pursuing his education, Father began working in audio visual technology, including audio production and live events. Subsequently, Father converted this casual work into a career, which includes DJing weddings and other events, and providing A/V support for various conferences and live events. In support of his testimony regarding his earnings, Father provided his 2022 tax return (Exhibit 1), his 2022 tax return (Exhibit 2), and a Profit and Loss Statement (P & L) for part of 2023, after he converted his business to a limited liability company (LLC) called Elemental AV[] Company ("Company"). Mother requested the [Original Hearing Officer] impute a higher gross income ($100,000) to Father. Nothing of record suggests Father could or has ever earned that income level.

Plaintiff's Monthly Net Income:

Mother is unemployed but has exceptional educational credentials. Unfortunately, she does not have any relevant work experience or earnings history to assess her with a significant earning capacity. With her education, Mother could have earnings nearing $100,000 annually, but, without relevant experience, this [Hearing Officer] cannot assess her with that level of income. Nevertheless, the [Hearing Officer] believes since Mother is highly educated, young, mostly healthy, and able to work, she has an earning capacity, albeit limited due to her lack of relevant experience and custodial duties to the [C]hildren. Clearly, Mother's earning capacity may change over time once she is able to find an open opportunity in her chosen career field, but as of the hearing, Mother's earning capacity should be assessed at $15 hourly for 40 hours weekly or a gross annual income of $30,000 (50 weeks x 40 hours x $15). This wage level is essentially the income a person could expect to earn at a local retail or convenience store.

- 4 -

. . .

As a result of the [Original Hearing Officer's] findings, Mother's net income for support purposes is as follows:

Plaintiff's Net Income

| | |
|---|---|
| Gross Income | $ 30,000.00 |
| Federal Tax | $ (3,368.00) |
| State Tax | $   (921.00) |
| Local Tax | $   (300.00) |
| Social Security | $ (1,860.00) |
| Medicare | $   (435.00) |
| Child Tax Credit (3) | $ 4,800.00 |
| Yearly Net Income | $ 27,916.00 |
| Monthly Net Income | $  2,326.33 |

This net income calculation utilizes Mother as Head of Household with three children and the 2023 tax schedules.

Defendant's Monthly Net Income:

Father's business has various customers utilizing his services. In 2023, Father acquired a new customer that significantly increased his revenue. Essentially, Father testified his income is more accurately reflected in his tax returns than his most recent P & L as a significant customer informed him recently his services moving forward would not be necessary.  As noted in the P & L offered as Exhibit 3, Father's business had Net Profits of approximately $22,200 in the last six months of 2023.  However, the [Hearing Officer] would note there is at least one questionable expense included in the P & L of $2,500 for legal expenses, which Father acknowledged were a personal expense, not a business expense.  Additionally, there were a few other questionable expenses on the P & L. There was a Wage Expense of $500, which appears to have been paid to Father, unsubstantiated Car, Truck, Vehicle expenses of $1,018.31, Insurance $250, and Rent $97. As to the last three expenses, there was no testimony on the legitimacy of those expenses.  Father used his personal vehicle, the P & L does not identify the type of insurance, and nothing in the testimony suggested Father rented space for his business so it is unclear how the rent expense had been

incurred. Moreover, Father's testimony was somewhat dubious when it came to his accounting practices. Also, several of the Office, Supplies, Software expenses included one-time purchases of equipment, computers, and other business equipment, which would typically be considered depreciable assets not expenses. Moreover, it is unlikely that Father will incur these expenses on an ongoing basis.

The [Original Hearing Officer] finds that the P & L offered does not accurately reflect Father's income for support purposes nor do his offered tax returns. As noted above, Mother requested the [Original Hearing Officer] impute a higher gross income ($100,000) to Father. However, nothing of record suggests Father could or has ever earned that income level. As such, the [Original Hearing Officer] declines to impute Father an income to that income level; instead, the [Original Hearing Officer] will add back those questionable or unsubstantiated expenses above to the Net Profit indicated on the P & L. As such, the [Original Hearing Officer] finds Father's gross income from his business is $75,716.36.[fn.1]

[fn.1] Adding the indicated expenses back into the profits results in $37,858.18 but this amount is for six months. The [Original Hearing Officer's] indicated Gross Income is multiplied by two.

Based upon the foregoing, [the Original Hearing Officer] finds Father's Monthly Net Income is as follows:

Defendant's Net Income

| | |
|---|---|
| Gross Income | $ 75,716.36 |
| Federal Tax | $ (12,185.10) |
| State Tax | $ (2,324.49) |
| Local Tax | $ (757.16) |
| Social Security | $ (4,694.41) |
| Medicare | $ (1,097.89) |
| Yearly Net Income | $ 54,657.30 |
| Monthly Net Income | $ 4,554.78 |

The net income calculated utilizes Father as single taxpayer under the 2023 tax table/brackets.

Hearing Summary, 3/7/24, at 1-4.

In conclusion, the Original Hearing Officer calculated Father's actual, yearly gross income to be $75,716.36, imputed to Mother a yearly income equal to an earning capacity $30,000.00, and recommended that Father pay $1,410.00 per month for child support. **See id.** at 1-5. On March 7, 2024, the trial court entered an interim order consistent with the proposed order of the Original Hearing Officer. **See** Trial Court Order, 3/7/24, at 1-4; **see also** Pa.R.C.P. 1910.12(e). Specifically, the trial court's interim order declared that, effective August 4, 2022, Father "shall pay child support for [three] children of $1,410 monthly." **See** Trial Court Order, 3/7/24, at 1-4.

Father filed timely exceptions to the Original Hearing Officer's report and, in these exceptions, Father claimed that the Original Hearing Officer erred in determining that Father's gross yearly income was $75,716.36. **See** Father's Exceptions to the March 7, 2024 Report, 3/27/24, at ¶ 4(d). Following argument, the trial court dismissed Father's exceptions on June 21, 2024 and declared that "[t]he interim order dated March 7, 2024 shall become a final order." Trial Court Order, 6/21/24, at 1.

On July 16, 2024, Father filed a petition for modification of the final child support order. Within Father's petition, Father requested a downward modification of his support obligation, due to "[c]hanges in income and financial circumstances." **See** Father's Modification Petition, 7/16/24, at 2. On October 23, 2024, the current Hearing Officer (hereinafter "the Current Hearing Officer") held a hearing on Father's petition. During the hearing, Father testified that he owns a small audiovisual business and also works as

"an independent contractor for other [audiovisual] companies." N.T. Modification Hearing, 10/23/24, at 3 and 6. As to his independent contracting, Father testified:

> So I do audiovisual productions, so I get hired by other audiovisual companies. I work some Steelers games, like I'll run microphone at the Steelers games, and that's a W2 pay.
>
> . . .
>
> Occasionally I do a W2 with the convention center. I work for the union, and they usually pay a W2, but they are pretty small.

*Id.* at 6.

During the hearing, Father produced his 2023 federal income tax return. *See id.* at 5. As Father testified, this tax return "was not due until October 15. So this tax return was not available in the original hearing for support." *Id.* Father testified that the 2023 tax return demonstrates that his adjusted gross income for his "company and [his] side work" totaled $44,757.00 for the year. *Id.* at 8.

Father testified that his 2023 income tax return was proof that "in the last six months, [his] income has gone down." *Id.* at 9. Moreover, Father testified that he cannot afford to pay the amount of child support that is required under the June 21, 2024 order, and which is based upon the Original Hearing Officer's determination that his yearly gross income was $75,716.36. He testified:

> Here is my 2022 [income tax] return. This was $34,600 – so I've never made $75,000 in my life. And this is already $10,000 above what I made the most in my life.
>
> . . .
>
> I just don't have the income to make these payments, and I'm working on it. . . . [I]n the last six months, my income has significantly dropped. That's why I want the modification to be based on my last six months.

*Id.* at 9 and 11.

Moreover, Father testified that the Original Hearing Officer's determination that his yearly gross income was $75,716.36 was based on:

> data collected in January of [the prior year], before I even had any of my 1099s. I didn't even have 2023. It wasn't based on 2023's annual income. It was based on what – I had a really great month where I sold a lot of stuff, and that got multiplied out.
>
> . . .
>
> It was September, October. I sold about $20,000 worth of labor. And another $20,000 worth of rental. I rented out a bunch of stuff. I just had this great sale.

*Id.* at 20-21.

Father, however, testified:

> The clients that I sold that labor for, they [were] a new client, and they ended up hiring part time guys and I don't have them anymore. That was like a one-time event. So that pumped my sales up for that year, but now I don't have that client.

*Id.* at 27.

On November 8, 2024, the Current Hearing Officer filed a Hearing Summary and recommended that Father's petition for modification be dismissed. The Current Hearing Officer explained:

> [Father] underpaid [his child support obligation] throughout much of 2024. [Father] seeks a reduction in his monthly support obligation, contending a recent decrease in his income. [Father] was previously assessed a $75,716.36/year earning capacity as a self-employed videographer following a [January 25, 2024 half-day] complex hearing. [Father] continues to work as a self-employed videographer. [Father's] exceptions to the [March 7, 2024] hearing summary stemming from the [January 25, 2025] complex hearing, and more specifically to the earning capacity he was assigned by the [Hearing Officer] in the [March 7, 2024] hearing summary, were dismissed on [June 21, 2024]. Testifying to currently grossing $4,000 [per month] and submitting a profit [and] loss statement from [April 1, 2024 to October 1, 2024] pertaining to his company "Elemental AV" showing a "$10,959.75" profit for that [six-month] period, [Father] contends that a reduction in his income constitutes the necessary change in circumstances to file the instant modification. [Father] is not found to be credible regarding his purported decrease in income and therefore change in circumstances. . . .
>
> [Father's] brief in support of exceptions to the [March 7, 2024] Hearing Summary indicate[s] that [Father] had a "claimed income" of approximately $45,000 [per year, i.e.] $3,000 less per year than he averred earning at the instant hearing to address his petition to modify. [Father] is again requesting that his monthly support obligation be based essentially on his own assessment of his earning capacity, i.e., adjusted gross earnings of less than $50,000 [per year]. As he is again indicating earnings of less than $50,000, he offers no evidence of an actual and recent "change in circumstances" or a factual basis to modify his monthly support obligation. His exception to being assigned the earning capacity the [Hearing Officer] assigned him in [March 7, 2024] Hearing Summary was dismissed and therefore

[Father] is also without a legal basis to again address the earning capacity assigned to him by the [Hearing Officer].

Hearing Summary, 11/8/24, at 1-2.

Father filed timely exceptions to the Current Hearing Officer's report. On January 28, 2025, the trial court dismissed Father's exceptions and declared "[t]he order entered November 8, 2024 shall become a final order of court." Trial Court Order, 1/28/25, at 2. Moreover, in response to Father's claim that the Current Hearing Officer erred when it failed to find a "substantial change in circumstances" warranting modification, the trial court declared:

> Simply stated, [the Current Hearing Officer] found that Father failed to present any credible or competent evidence [to] demonstrate that any substantial change in circumstances occurred within the [25-day] period from the date of the support order from which he sought modification and the date on which he filed his [petition to modify the child support order].

Trial Court Opinion, 10/24/25, at 6.

Father filed a timely notice of appeal. He raises the following claims to this Court:

> 1. Did the trial court err and abuse its discretion by affirming a support order where the [Current] Hearing Officer failed to independently assess [Father's] current earnings on a pending modification petition and instead relied on a prior imputation based on stale financial data?
>
> 2. Did the trial court commit an error of law by affirming a support determination that treated business gross receipts as personal income and disregarded ordinary and necessary business expenses, without findings that such expenses were unreasonable, personal, or unsupported?
>
> 3. Was [Father] denied due process where no transcript exists of the exceptions proceedings, and the trial court relied

- 11 -

on the absence of a record to overrule [Father's] exceptions and insulate substantive legal error from appellate review?

4. Where a support order rests on both substantive legal error and a procedurally deficient record, is vacatur and remand for recalculation based on actual earnings, effective as of the modification petition date, required?

Father's Brief at 2-3.[4]

"We review a trial court's support order for abuse of discretion." ***Sheetz v. Sheetz***, 840 A.2d 1000, 1002 (Pa. Super. 2003).

An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the [trial] court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill-will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citations and corrections omitted).

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility[,] and this Court will not reverse those determinations so long as they are supported by the evidence.  We are also aware that a [hearing officer's] report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [hearing officer] has the opportunity to observe and assess the behavior and demeanor of the parties.

***Brubaker v. Brubaker***, 201 A.3d 180, 184-185 (Pa. Super. 2018).  "Support orders must be fair, non-confiscatory[,] and attendant to the circumstances

---

[4] We note that Mother did not file a brief in this matter.

of the parties." ***Spahr v. Spahr***, 869 A.2d 548, 552 (Pa. Super. 2005) (citations and quotation marks omitted).

"A petition for modification of a support order may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances." ***See*** 23 Pa.C.S.A. § 4352(a). "Pursuant to a petition for modification, the trier-of-fact may modify . . . the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification." Pa.R.C.P. 1910.19(c). Further, "[i]f the trier-of-fact finds that there has been a material and substantial change in circumstances, the [existing child support] order may be increased or decreased based on the parties' respective monthly net incomes, consistent with the support guidelines, existing law, and Pa.R.Civ.P. 1910.18(d), and the party's custodial time with the child at the time the modification petition is heard." Pa.R.C.P. 1910.19(c). Moreover,

> [w]hen modification of a child support order is sought, the moving party has the burden of proving by competent evidence that a material and substantial change of circumstances has occurred since the entry of the original or modified order. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

***McClain v. McClain***, 872 A.2d 856, 863 (Pa. Super. 2005) (quotation marks omitted). "[T]he determination of whether such change has occurred in the circumstances . . . rests within the trial court's discretion." ***Summers v.***

***Summers***, 35 A.3d 786, 789 (Pa. Super. 2012) (some quotation marks omitted).

First, Father claims the trial court erred as a matter of law when it adopted the Current Hearing Officer's recommendation and held that Father "failed to present any credible or competent evidence [] to demonstrate that any substantial change in circumstances occurred" since the prior support order was entered. ***See*** Father's Brief at 9-14. Specifically, Father claims that the trial court failed to properly "evaluate the evidence presented and apply the correct income rules." ***Id.*** at 12. We agree.

As explained above, the original child support hearing was held before the Original Hearing Officer on January 25, 2024 and, following the hearing, the Original Hearing Officer determined that Father's **actual, yearly gross income** was $75,726.36. ***See*** Hearing Summary, 3/7/24, at 4. After this determination became final on June 21, 2024, Father filed his petition to modify on July 16, 2024, where he claimed that "substantial change in circumstances" warranted modification of the underlying order. In particular, Father claimed that "in the last six months, my income has significantly dropped." ***See*** N.T. Modification Hearing, 10/23/24, at 9 and 11.

The Current Hearing Officer held a hearing on Father's modification petition and, on November 8, 2024, the Current Hearing Officer recommended that Father's petition for modification be dismissed. The Current Hearing Officer declared that Father failed to prove that a material and substantial change of circumstances occurred since the entry of the prior order, as Father

"was previously assessed a $75,716.36/year **earning capacity**" and Father failed to demonstrate that "the **earning capacity** assigned to him by the [original Hearing Officer]" was lower. ***See*** Hearing Summary, 11/8/24, at 1-2. The trial court then dismissed Father's exceptions to the Current Hearing Officer's report by, essentially, adopting the Current Hearing Officer's report and recommendation. ***See*** Trial Court Opinion, 10/24/25, at 6.

The determination of the Current Hearing Officer and the trial court, however, rest upon the mistaken belief that the Original Hearing Officer **imputed to Father an income equal to an earning capacity** of $75,726.36. ***See*** Hearing Summary, 11/8/24, at 1-2; Trial Court Opinion, 10/24/25, at 6; ***see also*** Pa.R.C.P. 1910.16-2(d) ("[w]hen a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity"). This belief is mistaken, as the Original Hearing Officer did not determine that Father "willfully fail[ed] to obtain or maintain appropriate employment" and the Original Hearing Officer did not impute to Father an earning capacity. Rather, the Original Hearing Officer looked at Father's Profit and Loss Statement for a portion of 2023, added back certain, disallowed expenses, and held that Father's **gross income** for the prior six month period was $37,858.18. ***See*** Hearing Summary, 3/7/24, at 3-4; ***see also*** Pa.R.C.P. 1910.16-2(a) ("[m]onthly gross income is ordinarily based on at least a six-month average of a party's income"). The Original Hearing Officer then multiplied Father's

- 15 -

six-month gross income by two and determined that Father's **actual**, yearly gross income was $75,726.36. **See** Hearing Summary, 3/7/24, at 4.

During the modification proceedings, Father produced evidence demonstrating that his actual, yearly gross income had "significantly dropped" and that, in the year 2023, his adjusted gross income for his "company and [his] side work" totaled $44,757.00. **See** N.T. Modification Hearing, 10/23/24, at 8, 9 and 11. Nevertheless, relying upon the mistaken belief that the Original Hearing Officer imputed to Father an income equal to an earning capacity of $75,726.36, both the Current Hearing Officer and the trial court concluded that Father failed to prove a material and substantial change of circumstances because Father failed to demonstrate that "the earning capacity assigned to him by the [original Hearing Officer]" was lower. **See** Hearing Summary, 11/8/24, at 1-2; Trial Court Opinion, 10/24/25, at 6. Respectfully, this constitutes legal error, as the Original Hearing Officer did not impute to Father an earning capacity and no determination has ever been made that Father "willfully fail[ed] to obtain or maintain appropriate employment." **See** Pa.R.C.P. 1910.16-2(d). Absent these findings, Father was not required to demonstrate that there existed a change in circumstances relative to his earning capacity and the trial court erred in so concluding. We must, therefore, vacate the trial court's order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/7/2026